Darrell D. HIETT

v.

The UNITED STATES.

No. 32–52.

United States Court of Claims.

April 5, 1955.

As Modified June 7, 1955.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the brief.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff in his petition filed January 21, 1952, alleged that he was released from active duty as a Reserve Officer in the Army on January 18, 1947, without retired pay; that by a decision of the Army Disability Review Board, of September 28, 1951, that plaintiff had been permanently disabled as an incident of his service in the Army, which decision was approved by the Secretary of the Army, he was given retired pay beginning on October 1, 1951; that due to a ruling of the Comptroller General contrary to the decisions of this court he was not given retired pay for the period January 18, 1947, the date of his release from the Army, to October 1, 1951. He alleged that his retired pay for that period would have been $9,461.28, and he asked judgment for that amount.

Because of a possible lack of jurisdiction in the Army Disability Review Board to make the decision which it made on September 28, 1951, it may be that the plaintiff's petition, when filed, did not state a cause of action. However, the Government's motion and its response to the plaintiff's motion contains a decision of the Army Board for the Correction of Military Records which fully supplies the possible defect in the plaintiff's petition. That Board, whose jurisdiction is not challenged, decided, as had the Disability Review Board, that the plaintiff had been permanently incapacitated for active service by injuries suffered as an incident of service. It found that his military records should be corrected to show that his relief from active duty on January 18, 1947, was by reason of physical disability, and to certify him as eligible for the receipt of retirement pay. The Board, however, made his retirement pay effective only from October 1, 1951.

Since the decision of the Board for the Correction of Military Records, tendered in this suit by the Government, supplies the possible defect in the plaintiff's petition, we will treat the petition as if it had been amended to allege those additional facts. As so amended, it states a cause of action.

We have then another case in which it has been determined by competent authority that an officer was eligible for retired pay, but he has been denied that pay for a period after his release from the Army, his retired pay having been fixed to commence at a date some time after his release. We have decided several such cases. Womer v. United States, 84 F.Supp. 651, 114 Ct.Cl. 415. Hamrick v. United States, 96 F.Supp. 940, 120 Ct.Cl. 17, and Ramsey v. United States, 107 F.Supp. 957, 123 Ct.Cl. 504, certiorari denied 345 U.S. 994, 73 S.Ct. 1135, 97 L.Ed. 1401. It would seem from the foregoing that the plaintiff would be entitled to the judgment for which he asks.

The Government however, interposes the defense of an alleged release. The story of the release is as follows: The plaintiff filed his petition here on January 21, 1952. At that time the plaintiff was receiving retired pay under the decision of a Disability Review Board, approved by the Secretary of the Army and referred to above, that he had been permanently disabled as a result of an incident of service. But, under that order, his retired pay had been made effective only from October 1, 1951, though he had been separated from the service on January 18, 1947.

His suit in this court asked for retired pay for the interim between the date of his separation and October 1, 1951. This court, at the urging of Government counsel, suggested that he go first to the Board for the Correction of Records. He promptly did so on April 17, 1952, asking the Board to correct his record to show

that he was entitled to retroactive retired pay. Meanwhile he was getting his current retired pay.

On February 28, 1953, the plaintiff's current retired pay was discontinued, for the reason, advanced by the Comptroller General, that the Disability Review Board which had made the determination of the plaintiff's eligibility for retired pay had no jurisdiction to do so, since the orders separating the plaintiff did not state that he had been separated for physical disability. That, of course, required another correction of the records, and the plaintiff applied, on June 1, 1953, to have that correction made so as to reinstate his current back pay. Four days later, on June 5, 1953, the Board rejected the plaintiff's application for retroactive pay, the application which he had made, on our suggestion, more than a year before. It continued, however, to process his application for the correction to reinstate his current back pay.

A few days later, on June 15, 1953, the Supreme Court denied certiorari in our Ramsey case, supra, the Government and the Comptroller General acquiesced in the doctrine we had laid down, and the plaintiff became entitled to a judgment, on motion, on his pending suit in this court. The commissioner of this court who had charge of the case advised the plaintiff's lawyer to go to the General Accounting Office and get his money. He went there, and his claim was in the process of settlement there.

On September 14, 1953, the Board for Correction of Records corrected the plaintiff's record to show that his current pay should not have been discontinued, and recommended that the Army pay all money found to be due as retired pay from October 1, 1951, less the amounts received by the plaintiff. The Board found that the plaintiff had been separated on January 18, 1947, as a result of an incident of service, but, following a supposed policy of Congress, refused to certify the plaintiff for retroactive retired pay for the 1947–51 period.

The Board's decision was dated September 30, 1953, and sent to the plaintiff's attorneys on October 9. On October 12, the plaintiff's attorneys, following a suggestion of the commissioner of this court, sent to the Assistant Attorney General, Civil Division, a copy of their letter to the Comptroller General requesting an administrative settlement of the plaintiff's claim for retired pay for 1947–51, and a motion to dismiss the pending action in this court, the motion to be used only if a satisfactory administrative settlement was arrived at. On October 14, 1953, the Adjutant General of the Army notified the plaintiff that his record had been corrected to show that he was entitled to his current retired pay, that is, that which had accrued since October 1, 1951, but had been interrupted on February 23, 1953. On May 20, 1954, the Army Chief of Finance wrote the plaintiff, in Arkansas, stating the account with regard to the plaintiff's current retired pay and showing that, in addition to what he had received before the interruption, and what he had received from the Veterans' Administration during the interruption, he was entitled to $2,538.25. The letter enclosed the "claims certificate" to be signed by the plaintiff, which contained the release now relied on by the Government. The plaintiff signed the certificate, and, apparently, was then paid by the Finance Officer.

On May 28, 1954, the General Accounting Office wrote the plaintiff's attorneys in Washington asking for some routine information which was necessary before the final approval and payment of the plaintiff's other claim, the one here in litigation, for retroactive retired pay for the 1947–51 period. The plaintiff's attorneys furnished the information on June 10. On June 14 the General Accounting Office wrote the plaintiff's attorneys that the plaintiff had released the claim which the General Accounting Office had under consideration. The Government is asserting that alleged release as its defense.

The situation then, is this. The plaintiff had a suit pending in this court. By our precedents, the suit was well founded and would result in a judgment for some $9,000. Government counsel urged us to delay consideration of the case while the plaintiff resorted to the Board for the Correction of Military Records. We did so, and the plaintiff did so. The Board refused to grant the plaintiff any relief. He could then have come back to the court and asked for, and presumably received, a summary judgment for his $9,000. However, in the meantime the Supreme Court, by denying certiorari in our former case, had settled the law, and the Attorney General and the General Accounting Office had accepted it as settled. The commissioner of this court suggested to the plaintiff's lawyers that instead of coming here and asking for judgment, they go to the General Accounting Office and close the case out administratively. They did go to the General Accounting Office and the case was in the process of being so closed out.

In the meantime, the Army, against whom the plaintiff had another and much smaller claim decided that that claim of the plaintiff was well founded and that he was entitled to $2,538.25. They sent him a filled out form for his claim, which form contained a release, told him that if he would sign and return the form he would get his $2,538.25. He executed the form and, presumably, got the money. Then the General Accounting Office stopped processing the $9,000 claim, saying that the plaintiff had released it. The plaintiff came back into our court and found that the Government was asserting the release as a defense.

No one could assert that the plaintiff, by signing the release, intended to surrender the claim here in litigation. No one could, we think, assert that the Finance Officer of the Army intended, in paying the plaintiff $2,538.25 which the Army unquestionably owed the plaintiff, to get the plaintiff to release another claim for $9,000, which the Army unquestionably owed him. The Government urges that, regardless of the intention of the parties, the release given by the plaintiff has, by the mandate of statute, the devastating effect which is claimed for it. Section 207 of the Legislative Reorganization Act of 1946, as amended by the Act of October 25, 1951, 65 Stat. 655, 5 U.S.C.A. § 191a, provides in subsection (a) that the respective Secretaries of the Military Services may, through boards of civilian officers or employees appointed by them, correct military records "to correct an error or remove an injustice * * *." Subsection (b) authorizes the Department concerned to pay claims found to be due because of a correction of records. Subsection (c) says:

> "The acceptance by the claimant of any settlement made pursuant to subsection (b) of this section shall constitute a complete release by the claimant of any claim against the United States on account of such correction of record."

We see nothing in the language of this statute to indicate that Congress intended, when it set out to ease the path of military personnel in obtaining justice, to set a trap for the unwary soldier whose records needed correction in more than one respect, and who had filed separate applications for those corrections. In the instant case, the plaintiff's first application had been rejected, he had not been asked to sign any release, and he was free to resume negotiations with the General Accounting Office, or litigation. On his second application, on a different account, he was granted a correction. He released his claim "on account of such correction." But the statute does not say that he also released some other claim as to which there was no "such correction," but as to which he had been refused any correction.

The defendant's motion for summary judgment is denied. The plaintiff's motion for summary judgment is granted. Entry of judgment will be suspended to await a report from the General Accounting Office showing the amount due the plaintiff.

It is so ordered.

JONES, Chief Judge, and WHITA-KER and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

In the cases of Womer v. United States, 84 F.Supp. 651, 114 Ct.Cl. 415, and Hamrick v. United States, 96 F.Supp. 940, 943, 120 Ct.Cl. 17, this court held that where a Disability Review Board, created pursuant to section 302(a) of the Servicemen's Readjustment Act of 1944, 58 Stat. 284, 287, as amended by 59 Stat. 623, reviewed the action of a previous retirement board and arrived at a determination contrary to the decision of the previous board that the disability was an incident of service, the former officer was entitled to retirement benefits retroactive to the date of release from active duty. This was because section 302(a), supra, was a remedial act and this court held that it would not "dilute the effectiveness of this remedial statute by a holding that this plaintiff is entitled to something less than he would have had if the erroneous determination had not been made." However, the remedial act makes it the duty of the review board "to review, at the request of any officer retired or released from active service, without pay, for physical disability."

The review board in the present case acted beyond its authority inasmuch as the plaintiff had not been released for physical disability. This, of course, amounts to a determination that the plaintiff was physically disabled at the time of his release and perhaps warrants retirement pay prospectively. This does not, under the decisions of this court, mean that retroactivity must be given to the determination of the review board in this case.

In Nickell v. United States, 123 Ct.Cl. 859, there was a determination by a review board that a previous retiring board had erred in its determination that the disability was not contracted in service. Retroactivity was awarded in that case, not back to the date of the first release, which had not been by reason of disability, but only to the date upon which the plaintiff had been released for disability.

The plaintiff here, therefore, on the basis of the facts set forth in the petition, would not under the decided cases have been entitled to retroactive retirement pay to the date of his release because he had not been released for disability.

Subsequently, the Army Board for Correction of Military Records made findings which would have warranted payment of retroactive pay. The settlement proposed by this Board was payment of retirement pay from October 1, 1951, and the finance officer of the Army, as directed by Army Regulations No. 15–185, dated November 14, 1952, advised plaintiff that acceptance of this amount would constitute a release of all claims on account of the correction of his record. This was strictly in accord with section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 831, as amended by 65 Stat. 655. Subsection (c) thereof provides:

"The acceptance by the claimant of any settlement made pursuant to subsection (b) of this section shall constitute a complete release by the claimant of any claim against the United States on account of such correction of record."

Based upon information disclosed by the briefs in this case, the Finance Officer gave notice to the plaintiff as to the effect acceptance would have, as he was required to do by the regulations.

Plaintiff, to overcome the effect of the acceptance, claims in his brief that he did not understand what he was signing and the acceptance is of no effect. This, if properly before the court on pleadings, would require evidence. Johnson v. United States, 111 Ct.Cl. 750, 79 F.Supp. 208. I would not be disposed to so proceed in this case on the pleadings as filed.

It is elementary that plaintiff must allege facts sufficient to entitle him to recover. Plaintiff's petition is obviously

based not on the decision of the Board for Correction of Military Records, but on the decision of the Army Disability Review Board. The latter board being without jurisdiction to grant retirement pay to plaintiff, his claim necessarily must be predicated on the decision of the Correction Board, which is not alleged in the petition. In fact, plaintiff's petition was filed approximately 1 year and 8 months before the action of the Correction Board.

The court could, of course, permit plaintiff to amend his petition to properly present the question of the effect of the signature. Plaintiff, however, having moved for summary judgment, the case should be decided as it stands on the pleadings.

It appearing that plaintiff has not by his pleadings established a right to recover, I would dismiss the petition.